BARRACK, RODOS & BACINE
STEPHEN R. BASSER (121590)
sbasser@barrack.com
SAMUEL M. WARD (216562)
sward@barrack.com
600 West Broadway, Suite 900
San Diego, CA  92101
Telephone:   (619) 230-0800
Facsimile:    (619) 230-1874

*Attorneys for Plaintiffs and the Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA TURNER and GLENN ALCARAZ on behalf of all others similarly situated, <br><br> plaintiffs, <br><br> vs. <br><br> TOYOTA MOTOR CORPORATION; TOYOTA MOTOR SALES USA, INC., and DOES 1-50, inclusive, <br><br> Defendants. | Case No.: <br><br> **CLASS ACTION COMPLAINT** <br><br> 1. Violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* <br> 2. Violations of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* <br> 3. Violations of California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 <br> 4. Violation of California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* <br> 5. Breach of Express Warranty <br> 6. Breach of implied Warranty of Merchantability Cal. Com. Code § 2314 <br> 7. Fraud by Concealment <br> 8. Unjust Enrichment <br> 9. Violations of the Song-Beverly Act |

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10. Breach of Implied Warranty, Cal. Civ. Code §§ 1792, 1791.1, *et seq.*

11. Violation of Washington Consumer Protection Act, RCW 19.86.020

**DEMAND FOR JURY TRIAL**

CLASS ACTION COMPLAINT

Plaintiffs Laura Turner ("Turner") and Glenn Alcaraz ("Alcaraz") (collectively "Plaintiffs"), on behalf of themselves and all other similarly situated individuals, by their undersigned attorneys, allege the following causes of action against the defendants, as identified below, based on their personal knowledge as to themselves and their own acts, and on information and belief as to all other matters.

## I.    NATURE OF ACTION

1.    Plaintiffs bring a class action against defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. (collectively referred to herein as "Defendants" or "Toyota") and DOES 1 through 50, inclusive, seeking damages for breach of warranty and for unfair and deceptive acts or practices arising from Toyota's design, manufacture, and sale of defective 2010-2015 Prius and Prius PHV, 2012-2015 Prius V, 2012-2015 Avalon Camry Hybrid, and 2013-2015 Avalon Hybrid vehicles (the "Defective Class Vehicles").

2.    The Defective Class Vehicles, which are manufactured and sold throughout the United States, including from and within the State of California, are plagued by and possess a dangerous design and/or manufacturing defect in their braking systems (hereafter referred to as the "Toyota Brake Defect" or "Brake Defect"), which defect is more specifically associated with the brake booster pump assemblies with master cylinder in the Defective Class Vehicles and cause said vehicles' braking systems to fail. The defect, which is dangerous and life threatening, directly, materially, and adversely affects Plaintiffs' and Class Members' use and enjoyment of the Defective Class Vehicles, their safety, and their value.

3.    Tellingly, one of Toyota's own car dealers in California petitioned the National Highway Traffic Safety Administration ("NHTSA") to investigate the Toyota Brake Defect, complaining that it has been "causing crashes" that have been "injuring people," as more fully alleged below.

CLASS ACTION COMPLAINT                                    1

4.      However, despite knowing about the Toyota Brake Defect for several years, and its manifest serious risk of injury or death, Toyota has been concealing it from owners, purchasers, and lessees of the Defective Class Vehicles in a conscious and deliberate effort to avoid Defendants from suffering economic losses due to resulting diminution in value or need for repair of said vehicles at Toyota's own expense, greedily placing profits ahead of consumer safety.

5.      Meanwhile, there are many hundreds of thousands of Defective Class Vehicles being driven on America's roads and highways that have the potential to cause injury – including fatal or serious physical injury – to drivers, passengers, and pedestrians, and property damage, arising from a brake failure caused by the aforesaid vehicles' defect of design and/or manufacture.

6.      Plaintiffs and Class Members would not have purchased their vehicles had Toyota disclosed this dark, concealed truth regarding their inherent risk and danger, and certainly would have paid substantially less for said vehicles in any event.  Defendants' unfair, deceptive, and fraudulent business practices, and concealment of known, significant defects, has caused Plaintiffs and Class Members who purchased or leased the Defective Class Vehicles to have suffered damages and have otherwise caused them harm, including, but not limited to, ascertainable loss of money or loss of value of the purchased vehicles.   Toyota's conduct is not only unfair and deceptive, it is also egregious under the circumstances.

7.      As a result, Plaintiffs, on behalf of themselves and similarly situated purchasers of the Defective Class Vehicles, assert the causes of actions and claims as alleged below arising under the consumer protection laws of the State of California and its common law, with respect to the Nationwide Consumer Class, the California Consumer Class, and the Washington Consumer Class, as identified below, and, in addition, the consumer law of the State of Washington, with respect to said Washington State Consumer Class.

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the class of plaintiffs and one defendant are citizens of different States. This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9. This Court has specific personal jurisdiction over Toyota because it is registered to conduct business in California, has purposefully availed itself of the benefits and protections of California by continuously and systematically conducting substantial business in this judicial district, directing advertising and marketing materials to districts within California, and intentionally and purposefully placing Class Vehicles into the stream of commerce within the districts of California and throughout the United States with the expectation and intent that consumers would purchase them. Thousands of Class Vehicles have been sold in California and are operated within the state and the Central District.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Toyota transacts business in this District, is subject to personal jurisdiction in this District, and therefore is deemed to be a citizen of this District. Additionally, there are one or more authorized Toyota dealers within this District, Toyota has advertised in this District, and Toyota has received substantial revenue and profits from its sales and/or leasing of Class Vehicles in this District; therefore, a substantial and material part of the events and/or omissions giving rise to the claims occurred within this District.

## III. PARTIES

### A. Plaintiffs

CLASS ACTION COMPLAINT

3

11.    Plaintiff Laura Turner ("Turner") is a resident of Seattle, Washington.  In November 2017, Ms. Turner purchased a 2014 Prius from Toyota of Seattle, in Seattle, Washington.  Ms. Turner's Prius was manufactured, advertised, initially sold, and placed into the stream of commerce by Toyota Motor Sales, U.S.A. Inc. at the time it was headquartered in Torrance, California.

12.    Plaintiff Glenn Alcaraz ("Alcaraz") is a resident of Highland, California.  In December 2014, Mr. Alcaraz purchased a 2015 Prius II from Elmore Toyota in Westminster, California.

**B.    Defendants**

**1.    Toyota Motor Corporation**

13.    Defendant Toyota Motor Corporation ("TMC") is a Japanese corporation with its principal place of business located at 1 Toyota-Cho, Toyota City, Aichi Prefecture, 471-8571, Japan. TMC is the parent corporation of Toyota Motor Sales, U.S.A., Inc.   TMC, through its various entities, designs, manufactures, markets, distributes, and sells Toyota and Lexus automobiles in California and multiple other locations in the United States and worldwide.

**2.    Toyota Motor Sales, U.S.A., Inc.**

14.    Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is incorporated in California and headquartered in Plano, Texas.  TMS is Toyota's U.S. sales and marketing arm, which oversees sales and other operations in 49 states. TMS distributes Toyota and Lexus vehicles and sells these vehicles through its network of dealers.  Money received from the purchase of a Toyota vehicle from a dealer flows from the dealer to TMS. Money received by the dealer from a purchaser can be traced to TMS and TMC.

15.    At all times herein mentioned, Toyota designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or

failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and/or sold Toyota vehicles, including the subject vehicles operated by Plaintiffs.

16.    TMS and TMC sell Toyota vehicles through a network of dealers who are the agents of TMS and TMC.

17.    TMS and TMC are collectively referred to in this complaint as "Toyota" or the "Defendants," unless identified as TMS or TMC.

18.    Toyota manufactured, sold, and warranted the Defective Class Vehicles throughout the United States.  Toyota and/or its agents, divisions, or subsidiaries designed, manufactured, and installed the defective braking system on the Defective Class Vehicles.

19.    The true names and capacities of the Defendants sued herein as DOES 1 through 50, inclusive, are currently unknown to Plaintiffs, who therefore sues such Defendants by such fictitious names. Each Defendant designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiffs will seek leave of Court to amend this Complaint to reflect the true names and capacities of any Defendants designated herein as DOES when such identities become known.

20.    Based upon information and belief, Plaintiffs allege that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendant, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other Defendants. In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to, and ratified by, each other Defendant.

**IV.    FACTUAL BACKGROUND**

CLASS ACTION COMPLAINT

5

**A.    The Dangerous Brake Defect of Design and/or Manufacture of the Defective Class Vehicles Exposing Consumers to Grave Risk and Harm**

21.    The Defective Class Vehicles have a significant brake defect. This defect of design and/or manufacturer arises from brake booster pump assemblies with the master cylinder that were designed and/or manufactured defectively, causing system failure, (the "Brake Defect").

22.    Numerous consumers have reported over the past several years experiencing brake failures and related braking problems with respect to Defective Class Vehicles, including those that render the braking system inoperable during normal driving conditions.  Excepting 2010 Prius models that were the subject of a very limited and inadequate recall by Toyota in 2013, NHTSA has received well over 1,000 Brake Defect related complaints from consumers associated with the Defective Class Vehicles. These include, among various complaints, scores of complaints of brake malfunction, a substantial number of which have resulted in vehicular crashes, many of which resulted in personal injury.  The Brake Defect has the potential to cause serious injury, including fatal injury.

23.    On September 19, 2019, Roger Hogan, ("Hogan") one of Toyota's dealers, brought the Brake Defect problems front and center before the NHTSA, by sending a letter entitled, "Petition for Defect Investigation – Toyota Hybrid Brake Failures Causing Crashes and Injury" ("Petition") addressed to the U.S. Department of Transportation, National Highway Traffic Safety Administration (NVS-210) Office of Defect Investigations, in Washington D.C.

24.    Mr. Hogan's petition was the culmination of his dealership having received a request to conduct a partial repair on a 2013 Toyota Prius that had been involved in a serious crash that injured three teenage girls. The driver reportedly exited a freeway in a Los Angeles neighborhood and struck the three teens at a crosswalk. At least one of the

CLASS ACTION COMPLAINT

6

girls hit the windshield and was thrown into the roadway, causing **traumatic brain injuries**. The driver of the 2013 Toyota Prius Liftback involved in the "tragic crash" Mr. Hogan highlighted, maintained that the **brakes had failed** on this rented Prius vehicle.

25. Previously, Mr. Hogan was a "Prius loyalist." He owns a pair of dealerships in San Juan Capistrano and Claremont, California. But as he began noticing a pattern of complaints from Toyota customers about the braking system on certain models, including the Toyota Prius Liftback from 2010 to 2015, the Prius Plug In from 2012 to 2015, the Camry Hybrid from 2012 to 2014 and the Avalon Hybrid from 2013 to 2015, civic duty motivated Mr. Hogan to file his Petition.

26. In the Petition, Mr. Hogan noted the existence of defective "brake booster pump assemblies with the master cylinder" in the subject vehicles and warned NHTSA that "this brake defect is causing crashes that are injuring people" while further observing that "Toyota is mishandling it".

27. The reliable operation of brake booster pump assemblies with the master cylinder is crucial to a vehicle's ability to timely stop itself. While Toyota has in the past issued at least two limited safety (or non-compliance) recalls on hybrid vehicles containing these defective brake components – one in 2013 ("DOH") and one in 2019 ("KOL") – Mr. Hogan truthfully and credibly observed that "Toyota has put innocent lives at risk by knowingly **excluding hundreds of thousands of hybrids** with defective brakes **from past safety recall populations**".

28. Indeed, Mr. Hogan has actually notified Toyota in writing, requesting answers about these dangerous decisions. Toyota has refused to adequately or satisfactorily answer its own dealer.

29. Toyota has unfairly and deceptively excluded the identified Defective Class Vehicles from safety recalls. It is doing so despite the fact that the Defective Class Vehicles are all plagued by the same dangerous brake booster pump assembly defects as

Toyota models that were covered by prior reactionary, limited, post-failure brake repair recalls. As a consequence of excluding hybrids with defective brakes from the prior safety recalls, Toyota is now exposing owners of the defective class vehicles to potential life-threatening brake failure or malfunction **before** Toyota will provide the replacement brake components needed to make the vehicle safe.

30.    On March 7, 2019, amid "reports about certain internal malfunctions of the brake booster pump assemblies", Toyota announced phase II of their post-brake-failure repair program. Currently, Toyota only offers reimbursement for repair after the brakes in the 2010-2015 Prius excluded from the prior safety recall either fail or malfunction. This is totally inadequate. Toyota's failure to provide a full and preventative safety recall is unfair. Such a preventative safety recall **before** brake failure or malfunction must be done.

31.    The same holds true with respect to brake defects in Camry Hybrids and Avalon Hybrids. The need for recalls is not simply limited to the Prius. Toyota has, as part of its custom and practice, always kept itself informed of complaints and filings with NHTSA. And, of course, Toyota is privy to complaints that have been lodged with its dealerships across the country, including those with respect to brake failure of Defective Class Vehicles. Hence, **Toyota knows** that the brakes in the Defective Class Vehicles have demonstrated a **propensity for failure and malfunction but**, has unilaterally **decided to avoid** taking the necessary steps to conduct a **full preventative safety recall**, while simultaneously, unfairly and deceptively simply failing to take responsibility for the brake booster pump defects in said vehicles.

32.    Indeed, on July 24, 2019, Toyota launched a "non-compliance" recall KOL stating simply that "there is a possibility that the brake booster pump…may stop operating" which could cause "brake assist to be lost completely" and the Vehicle Stability Control (ESC) to become "deactivated". This recall is woefully inadequate. Recall KOL covered only a small population of 6,500 hybrid vehicles containing

CLASS ACTION COMPLAINT

defective brake booster pumps manufactured by Advics Co. Limited Ltd. The recall is dangerously incomplete and insufficient, particularly because the Defective Class Vehicles are experiencing the same dangerous consequence and non-compliance caused by brake booster pump defects and further exposing consumers who own Defective Class Vehicles to those same dangerous and potentially life threatening problems.

33.    On September 4, 2019, Toyota issued a Technical Service Bulletin 0130-19 for 2012-2014 Camry Hybrids and 2013-2015 Avalon Hybrids, which acknowledged that these hybrids were experiencing the same dangerous and non-compliance as to hybrids covered by safety recalls DOH and KOL. In the Technical Service Bulletin, Toyota stated that a "condition may be caused by a small internal brake **fluid leak** in the brake booster assembly with master cylinder" that will result "diagnostic trouble codes (DTCs) C1391, C1252, C1256 or C1253", being stored. In that regard, Toyota indicated that code DTC C1256 indicates unreasonable risk to safety by listing it on page 2 of the Technical Instructions for the DOH safety recall.

34.    Beyond the Technical Service Bulletin, Toyota launched another limited post-brake-failure repair program on September 11, 2019, on Camry Hybrid and Avalon Hybrid vehicles, identified as warranty enhancement ZKK, in which Toyota stated "reports have indicated certain internal malfunctions of the brake booster assembly" in 2012-2014 Camry Hybrids and 2013-2015 Avalon Hybrids. Hence, Toyota knows that these hybrids are experiencing the same increased stopping distance, loss of hydraulic pressure in the brakes, deactivation of Vehicle Stability Control, and deactivation of brake assist as the hybrids covered by their DOH and KOL safety recalls.

35.    Under the law, Toyota is required to prevent the life threatening dangers of brake defect **before** a failure occurs. It is not sufficient for Toyota to simply provide a part **after** the resulting dangerous brake failure arising from the Brake Defect has already happened. Again, Toyota has been placing cost cutting strategies ahead of consumer safety and, as a consequence, crashes and injuries has occurred. These crashes and

injuries have occurred by virtue of Toyota's deliberate decision to only provide a reactionary, post-failure repair, instead of a preventative safety recall remedy.

36.     In July 2019, Toyota commenced a safety recall for certain Lexus vehicles, reporting to NHTSA that there were some Lexus vehicles that "had a brake booster pump containing a plastic brush holder produced with an improper shape", and explaining that because of the brush holder's improper shape, there was a "possibility the plastic brush holder may have become stuck," and that if such an event should occur, "the brush would be unable to maintain an electrical connection with the motor and may cause the motor pump to stop operating," which, once it happens, could result in a "sudden and complete loss of breaking assist," thereby increasing stopping distance and ultimately the risk of a crash. While this is not as severe a defect as the Brake Defect that is the subject of this lawsuit, Toyota deemed this risk sufficient to engage in a prophylactic safety recall of Lexus vehicles so as to avoid any such potential problem from accruing. The distinction boils down to the fact that the Lexus prophylactic recall involved a relatively small number of vehicles.

37.     Toyota is still failing to address the need for a prophylactic remediation of the Brake Defect that is occurring in the existing Defective Class Vehicles which number in the hundreds of thousands. Toyota continues to avoid the responsibility and expense of making these vehicles safe to drive.

38.     However, there is no tangible difference between the circumstances in which Toyota's earlier braking system recalls have been prompted and the ever-present existing Brake Defect of the Defective Class Vehicles that justifies Toyota's failing to conduct a recall of all such vehicles before a potential brake failure occurs. In other words, a prophylactic fix and recall of the Defective Class Vehicles would be expensive given their number.

39.     Mr. Hogan confirms that the DTCs covered by Toyota's post-failure warranty enhancement plan for the vehicles are essentially the same as those codes which

present an unreasonable risk of safety under Toyota's earlier recalls. For example, DTC C1256 is triggered when there is a significant drop in accumulated pressure. The DTC is being stored at "alarmingly high rates in hybrids" that remain excluded from Toyota's safety recalls. Toyota obviously knows these defects present a dangerous basic safety feature and create a defective vehicle that puts lives at risk, even as it continuously refuses to repair these defects before a failure occurs. By choosing to only do so after a failure occurs, Defendants are placing the risk on unsuspecting consumers.

40.    Toyota has had long-standing knowledge of the unreasonable risk to safety and non-compliance with the Federal Motor Vehicle Safety Standards (such as FMVSS 126) occurring in Defective Class Vehicles that have been excluded from its safety recalls. Toyota acquires such knowledge on a real-time basis, having received real-time transmissions of DTCs and freeze frame data from hybrids with failed brakes through the tech stream tool at its franchise dealerships, as Mr. Hogan confirms. Still Toyota has failed to address the problem.

41.    Whether it is a defect causing an unreasonable risk to safety or non-compliance with Federal Motor Vehicles Safety Standards such as FMSS 126, Toyota is given three options: a preventative safety repair; replacing the vehicle with a comparable one, or refunding the price of the vehicle less depreciation. Toyota has not taken these required actions and, instead, continues to expose and allow the unsuspecting public to experience life threatening failures.

42.    In addition, the Defendants' long-standing knowledge of the Brake Defect associated with the Defective Class Vehicles arises from Toyota's monitoring, dealer repair records, warranty claims, testing, internal investigations, so-called quality control, and its interaction with consumers and dealers by its consumer relations department.

**B.    Toyota's Avoids Honoring its Own Warranty**

43.    Each sale by Toyota of a Defective Class Vehicle comes with a limited warranty. The "Limited New Vehicle Warranty" obligates Toyota to repair reported defects within the earlier of 3 years or 36,000 miles.

44.    Many owners and lessees have presented Defective Class Vehicles to Toyota-certified dealerships with complaints related to the Toyota Brake Defect. However, Toyota has evaded its warranty obligations by (1) failing to tell consumers that the Class Vehicles are defective and (2) refusing to perform repairs to correct the Brake Defect unless and until the Class vehicle has actually registered a Diagnostic Trouble Code indicating a failure caused by the Toyota Brake Defect.

45.    On August 9, 2018, Toyota initiated Customer Support Program ZJB, covering 2010-2015 Toyota Prius and Prius HPV vehicles, in which it instructed its dealers to replace the brake booster and brake booster pump assemblies at no charge to the customer, regardless of age or mileage through November 30, 2019 (for 2010 Prius and Prius HPV vehicles) and through August 31, 2021 (for 2011-2015 Prius and 2012-2015 Prius HPV vehicles), and thereafter until 10 years from the date of first use or 150,000 miles, whichever occurs first, if one of four specific Diagnostic Trouble Codes was stored in the vehicle's memory, i.e. the brake system had **already experienced a malfunction** during operation.

46.    If Toyota Prius owners have not already experienced an actual brake system malfunction resulting from the Toyota Brake Defect, then Toyota has told its dealers not to replace the brake booster assembly and/or brake booster pump assembly. Dealers have been instructed to tell customers to return for the repairs **after** they experienced a brake malfunction, thus avoiding fixing the defect in advance of a manifested brake failure, and thereby placing consumers at risk. Toyota has provided such instructions to its Dealers in writing, emphasizing that "if an owner has not experienced the condition, he/she is asked to place the notification tear off slip in the Owner's Manual for future reference."

47.     Even a Customer Support Program initiated in 2019 instructs dealers to only replace the brake system parts **IF** the vehicle had **already experienced a malfunction** of the brake system, as indicated by the presence of one of the four Diagnostic Trouble Codes stored in the vehicle's memory.

48.     Adding insult to injury, dealers have been instructed to inform owners they must contact a local authorized Toyota dealer for appropriate diagnosis and repair and that "if the condition is not covered by this Customer Support Program, the customer may be responsible for the initial diagnostic fees." This warning was also included in the Customer Support Program Notification Toyota sent to all owners, stating, "Please be aware that, if the condition is not covered by this Customer Support Program, you may be responsible for the initial diagnostic fees and any other repairs you may decide to have performed. Dealers have also been instructed that "**direct marketing** of this **Customer Support Program is strictly prohibited** pursuant to the Toyota Warranty Policy 5.21, "Warranty Solicitation" and that "non-compliance" with this policy "may result in a claim debit."

49.     There are approximately well over 1,000,000 vehicles with brake boosters and brake booster assemblies impacted by Toyota's 2018 and 2019 Customer Support Programs, placing the risk of brake failure on their owners, drivers, passengers, pedestrians, and consumer purchasers of the Defective Class Vehicles. This number does not include the owners of Prius vehicles, such as the Prius V, that Toyota excludes from such Customer Support Program.

## V.     CLASS ALLEGATIONS

### A.     The Nationwide Consumer Class

50.    Pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and a Nationwide Consumer Class initially defined as follows:

> All individuals or entities in the United States who are current or former owners or lessees of Defective Class Vehicle, as defined above.

**B.    The California Consumer Class**

51.    Pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff Alcaraz brings this action on behalf of himself and a California Consumer Class, defined as follows:

> All individuals or entities in the State of California who are current or former owners or lessees of Defective Class Vehicles, as defined above.

**C.    The Washington State Consumer Class**

52.    Pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff Turner bring this action on behalf of themselves and a Washington State Consumer Class, defined as follows:

> All individuals or entities in the State of Washington who are current or former owners or lessees of a Defective Class Vehicle, as defined above.

53.    Collectively, the Nationwide Consumer Class, the California Consumer Class, and the Washington State Consumer Class are referred to hereinafter as the "Class," unless otherwise individually identified.

54.    Excluded from the Nationwide Consumer Class, the California Consumer Class, and the Washington State Consumer Class are Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case, and all persons within the third degree of relationship to any such persons. Plaintiffs reserve the right to modify, change, or expand the aforesaid class definitions upon further discovery and investigation.

55.    The Nationwide Consumer Class, the California Consumer Class, and the Washington State Consumer Class pursue claims for violation of the Consumers Legal Remedies Act, CAL. CIV. CODE § 1750 *et seq*.; violation of the Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200 et seq.; violation of the False Advertising Law, CAL. BUS. & PROF. CODE § 17500 *et seq*.; breach of express warranty under CAL. COM. CODE § 2313; breach of implied warranty of merchantability under CAL. COM. CODE § 2314; violations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.; violations of the Song-Beverly Act – Breach of Implied Warranty, Cal. Cir. Code §§ 1792, 1791 *et seq*., and for common law fraudulent concealment. The Washington State Consumer Class also pursues claims for violation of the Washington Consumer Protection Act, RCW 19.86-020.

56.    Pursuant to Rule 23(a)(1), the Nationwide Consumer Class, the California Consumer Class, and the Washington State Consumer Class are each so numerous that joinder of all members is impracticable. Due to the nature of the trade and commerce involved, the members of each such Class are geographically dispersed throughout the United States. Joinder of all Class members would be impracticable. While the exact number of each such respective Class members is unknown to Plaintiffs at this time, Plaintiffs believe that there are, at least, over a million members of the Nationwide

CLASS ACTION COMPLAINT

Consumer Class, and many, many thousands of members of the California Consumer Class and the Washington State Consumer Class.

57.    Pursuant to Rule 23(a)(3), Plaintiffs' claims are typical of the claims of the other members of their respective Nationwide Consumer Class, California Consumer Class, and Washington State Consumer Class. Plaintiffs and other Class members received the same standardized misrepresentations, warranties, and nondisclosures about the safety and quality of Defective Class Vehicles. Toyota's misrepresentations were made pursuant to a standardized policy and procedure implemented by Toyota. Plaintiffs and class members purchased or leased Defective Class Vehicles that they would not have purchased or leased at all, or for as much as they paid, had they known the truth regarding the Brake Defect. Plaintiffs and the members of the Class have all sustained injury in that they overpaid for their Defective Class Vehicles due to Defendants' wrongful conduct.

58.    Pursuant to Rule 23(a)(4) and (g)(1), Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent experienced in class action and consumer fraud litigation.

59.    Pursuant to Rules 23(b)(2), Toyota has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each class as a whole. In particular, Toyota has failed to properly repair the Defective Class Vehicles and has failed to adequately implement a prophylactic or otherwise full brake repair for said vehicles.

60.    Pursuant to Rule 23(a)(2) and (b)(3), common questions of law and fact exist as to all members of Class and predominate over any questions solely affecting individual members thereof. Among the common questions of law and fact are as follows:

a. Whether Toyota had knowledge of the defects prior to its issuance of the

CLASS ACTION COMPLAINT

16

current safety recalls;

b. Whether Toyota concealed defects affecting Defective Class Vehicles;

c. Whether Toyota misrepresented the safety of the automotive vehicles at issue;

d. Whether Toyota's misrepresentations and omissions regarding the vehicles were likely to deceive a reasonable person in violation of the CLRA;

e. Whether Toyota violated the unlawful prong of the UCL by its violation of the CLRA;

f. Whether Toyota violated the unlawful prong of the UCL by its violation of federal laws;

g. Whether Toyota's misrepresentations and omissions regarding the safety of its vehicles were likely to deceive a reasonable person in violation of the fraudulent prong of the UCL;

h. Whether Toyota's business practices, including the manufacture and sale of vehicles with a Brake Defect that Defendants have failed to adequately investigate, disclose and remedy, offend established public policy and cause harm to consumers that greatly outweighs any benefits associated with those practices;

i. Whether Toyota's misrepresentations and omissions regarding the safety of its vehicles were likely to deceive a reasonable person in violation of the

CLASS ACTION COMPLAINT

FAL;

j. Whether Toyota's conduct violates the consumer loses and statistics of California or Washington.

k. Whether Toyota breached its express warranties regarding the safety and quality of its vehicles;

l. Whether Toyota breached the implied warranty of merchantability because its vehicles were not fit for their ordinary purpose due to their Brake Defect;

m. Whether Toyota was unjustly enriched at the expense of Plaintiffs, the Nationwide Consumer Class, the California Consumer Class and the Washington State Consumer Class;

n. Whether Plaintiffs and class members are entitled to damages, restitution, restitutionary disgorgement, equitable relief, and/or other relief; and

o. The amount and nature of such relief to be awarded to Plaintiffs and the respective classes as asserted and defined herein.

61.    Pursuant to Rules 23(b)(3), a class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all class members is impracticable. The prosecution of separate actions by individual members of the Nationwide Consumer Class, and/or the California Consumer Class, and/or the Washington State Consumer Class, would impose heavy burdens upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to those classes. A class action would achieve

CLASS ACTION COMPLAINT

18

substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness.

## VI.    TOLLING OF STATUTES OF LIMITATIONS

62.    Toyota's knowing and active concealment and denial of the facts alleged herein act to toll any applicable statute(s) of limitations. Plaintiffs and other Class members could not have reasonably discovered the true, latent nature of the Toyota Brake Defect until shortly before commencing this class-action litigation.

63.    In addition, even after Plaintiffs and other Class members contacted Toyota and/or its authorized dealers to repair the Toyota Brake Defect, Toyota and/or its dealers repeatedly and consistently told them the Defective Class Vehicles were not defective.

64.    Toyota has had, and continues to have, a duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the Defective Class Vehicles, including the facts that the Defective Class Vehicles require costly repairs, pose safety concerns, and have a diminished resale value. As a result of Toyota's active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## VII.   CAUSES OF ACTION

### COUNT I

### VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq.*)

65.    Plaintiffs incorporate by reference and reallege all paragraphs alleged herein. This Count is asserted by the Nationwide Consumer Class.

66.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 15 U.S.C. § 2301 (d)-(a).

67.    Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

68.    Toyota is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

69.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

70.    15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

71.    Toyota's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Defective Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

72.    Toyota breached these warranties as described in more detail above, but generally by not repairing or adjusting the Defective Class Vehicles' materials and workmanship defects; providing Defective Class Vehicles not in merchantable condition and which present an unreasonable risk of brake failure and not fit for the ordinary purpose for which vehicles are used; providing Defective Class Vehicles that were not fully operational, safe, or reliable; and not curing defects and nonconformities once they were identified.

73.    Plaintiffs and Class members have had sufficient direct dealings with either the Defendants or their agents (dealerships) to establish privity of contract between Plaintiffs and the Class members. Notwithstanding this, privity is not required in this case because Plaintiffs and Class members are intended third-party beneficiaries of contracts between Toyota and its dealers; specifically, they are the intended beneficiaries of Toyota's implied warranties. The dealers were not intended to be the ultimate consumers of the Defective Class Vehicles and have no rights under the warranty agreements provided with the Defective Class Vehicles. The warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also

CLASS ACTION COMPLAINT

not required because Plaintiffs' and Class members' Defective Class Vehicles Toyotas are dangerous instrumentalities due to the aforementioned defects and nonconformities.

## COUNT II

## VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT
### (CAL. CIV. CODE § 1750, *et seq.*)

74.　Plaintiffs incorporate the allegations set forth above as if fully set forth herein.

75.　TMC and TMS are "persons" under California Civil Code § 1761(c).

76.　Consumer Plaintiffs are "consumers," as defined by California Civil Code § 1761(d), who purchased or leased one or more Defective Vehicles.

77.　Consumer Plaintiffs attach as Exhibit B an affidavit that shows venue in this District is proper, to the extent such an affidavit is required by California Civil Code § 1780(d).

78.　The Defendants participated in unfair or deceptive acts or practices that violated the Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1750, *et seq.*, as described above and below and are directly liable for such violations. Toyota Motors Corporation is also liable for Toyota Motor Sales, U.S.A. Inc.'s violations of the CLRA because it acts as Toyota Motors Corporation's general agent in the United States for purposes of sales and marketing.

79.　By failing to adequate disclose and actively concealing the dangerous risk brake failure and the lack of adequate fail-safe mechanisms in the Defective Class Vehicles, Toyota Motor Sales engaged in deceptive business practices prohibited by the CLRA, CAL. CIV. CODE § 1750, *et seq.*, including (1) representing that the Defective Class Vehicles have characteristics, uses, benefits, and qualities which they do not have,

(2) representing that the Defective Class Vehicles are of a particular standard, quality, and grade when they are not, (3) advertising the Defective Class Vehicles with the intent not to sell them as advertised, (4) representing that a transaction involving the Defective Class Vehicles confers or involves rights, remedies, and obligations which it does not, and (5) representing that the subject of a transaction involving the Defective Class Vehicles has been supplied in accordance with a previous representation when it has not.

80.    The Defendants made numerous material statements about the safety and reliability of the Defective Class Vehicles that were either false or misleading. Each of these statements contributed to the deceptive context of the Defendants' unlawful advertising and representations as a whole.

81.    Defendants knew that the braking system in the Defective Class Vehicles was defectively designed and/or manufactured, would fail without warning, and was not suitable for its intended use of effectively and safely braking the vehicle on driver command. Defendants nevertheless failed to warn consumers and Plaintiffs about such inherent danger despite having a duty to do so.

82.    Defendants each owed Plaintiff and the Class Members a duty to disclose the Defective Class Vehicles' dangerous risk of brake failure, and lack of adequate fail-safe mechanisms, because Defendants:

a. Possessed exclusive knowledge of the defects rendering the Defective Class Vehicles inherently more dangerous and unreliable than similar vehicles;

b. Intentionally concealed the hazardous situation with the Defective Class Vehicles through their deceptive marketing campaign and any related program that they designed to hide the life-threatening problems from Plaintiffs and Class Members; and/or

CLASS ACTION COMPLAINT

22

c. Made incomplete representations about the safety and reliability of the Defective Class Vehicles generally, and their braking system in particular, while purposefully withholding material facts from Plaintiffs and the Class Members that contradicted these representations.

83. Defective Class Vehicles equipped with the braking system and Brake Defect pose an unreasonable risk of death or serious bodily injury to Plaintiffs, passengers, other motorists, pedestrians, and the public at large, because they are susceptible to incidents of an inability to timely and effectively stop the vehicle on demand.

84. Whether or not a vehicle decelerates and stops when commanded to do so are facts that a reasonable consumer would consider important in selecting a vehicle to purchase or lease. When Plaintiffs and Class Members bought or leased a Defective Class Vehicle for personal, family, or household purposes, they reasonably expected the vehicle would decelerate to a stop when the brake pedal was applied, and was equipped with any necessary fail-safe mechanisms including a brake-override.

85. Defendants' unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of the Defective Class Vehicles.

86. As a result of the violations of the CLRA detailed above, Defendants caused actual damage to Plaintiffs and Class Members and, if not stopped, will continue to harm Plaintiffs and Class Members. Plaintiffs currently own or lease, or within the class period have owned or leased, Defective Class Vehicles that are defective and inherently unsafe. The Brake Defect of the braking system has caused the value of the Defective Class Vehicle to plummet.

87.     Plaintiffs and Class Members risk irreparable injury as a result of Defendants acts and omissions in violation of the CLRA, and these violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public.

88.     Plaintiffs, via counsel, have provided Toyota Motor Sales, U.S.A., at its principal place of business in California, and thus, Toyota, with notice, as of February 18, 2020, in compliance with California Civil Code § 1782 and satisfying California Civil Code § 1782(a). Plaintiffs currently seek injunctive relief. After the 30-day notice period expires, Plaintiffs will amend this complaint in order to demand and recover monetary damages under the CLRA. Defendants have been on notice of the brake defect, fatalities, injuries, and need for a general recall and repair of the Defective Class Vehicles for well over 30 days, and are aware of Mr. Hogan's petition to NHTSA, and still have failed to adequately or meaningfully address and cure the problem.

89.     Toyota's fraudulent and deceptive practices proximately caused damages to Plaintiffs and the Class.

90.     Any recalls and repairs instituted by Toyota have not been adequate. Defective Class Vehicles are still defective.

91.     Plaintiffs seek equitable relief and an order enjoining Defendants' unfair or deceptive acts or practices under California Civil Code § 1780(e).

## COUNT III

## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200, *et seq.*)

92.     Plaintiffs and the Class reallege and incorporate by reference all paragraphs as previously set forth herein.

93.     Plaintiffs assert this claim on behalf of Class Members that purchased or leased a vehicle from Toyota or a Toyota dealership.

94.    California Business and Professions Code section 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices." Defendants have engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL.

95.    The Toyota Brake Defect presents and constitutes a safety issue that Toyota has a duty to disclose.

96.    Defendants have violated the unlawful prong of section 17200 by their violations of the Consumer Legal Remedies Act, CAL. CIV. CODE § 1750, *et seq*., as set forth in Count I by the acts and practices set forth in this Complaint.

97.    Defendants have also violated the unlawful prong because Defendants have engaged in business acts or practices that are unlawful because they violate the National Traffic and Motor Vehicle Safety Act of 1996 (the "Safety Act"), codified at 49 U.S.C. § 30101, *et seq*., and its regulations.

98.    Defendants have violated the fraudulent prong of section 17200 because the misrepresentations and omissions regarding the safety and reliability of their vehicles as set forth in this Complaint were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

99.    Defendants have violated the unfair prong of section 17200 because the acts and practices set forth in the Complaint, including the manufacture and sale of vehicles with a defective and dangerous braking system and Defendants' failure to adequately investigate, disclose, and remedy that defect, offend established public policy, and because the harm they cause to consumers greatly outweighs any benefits associated with those practices. Defendants' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiffs and Class Members from making fully informed decisions about whether to purchase or lease the Class Vehicles and/or the price to be paid to purchase or lease Class Vehicles.

100.    Plaintiffs have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. In

CLASS ACTION COMPLAINT

purchasing their vehicles, Plaintiffs have relied on the misrepresentations and/or omissions of Toyota with respect of the safety and reliability of the vehicle. Toyota's representations turned out not to be true because the Defective Class Vehicles had a defective and dangerous braking system.

101.   Had the Plaintiffs known this, they would not have purchased their Defective Class Vehicles and/or paid as much for them.

102.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

103.   Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and members of the Class any money Toyota acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in CAL. BUS. & PROF. CODE § 17203 and CAL. CIV. CODE § 3345; and for such other relief set forth below.

## COUNT IV

### VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE § 17500, *et seq.*)

104.   Plaintiffs and the Class reallege and incorporate by reference all paragraphs as previously set forth herein.

105.   Plaintiffs assert this claim on behalf of Class Members that purchased or leased a vehicle from Toyota or a Toyota dealership.

106.   California Business and Professions Code § 17500 states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or

disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

107.    Defendants caused to be made or disseminated from and through California and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers and Plaintiffs.

108.    Defendants have violated section 17500 because the misrepresentations and omissions regarding the safety and reliability of their vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

109.    Plaintiffs and Class Members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. In purchasing their respective vehicles, the Plaintiffs relied on the misrepresentations and/or omissions of Toyota with respect to the safety and reliability of the vehicles. Toyota's representations turned out not to be true because the vehicles can unexpectedly and dangerously accelerate out of the drivers' control. Had the Plaintiffs known this, they would not have purchased the Defective Class Vehicles and/or paid as much for them.

110.    Accordingly, the Plaintiffs overpaid for their Defective Class Vehicles and did not receive the benefit of their bargain. One way to measure this overpayment, or lost benefit of the bargain, at the moment of purchase is by the value consumers place on the vehicles now that the truth has been exposed. Both trade-in prices and auction prices for the Defective Class Vehicles have declined as a result of Defendants'

CLASS ACTION COMPLAINT

misconduct. This decline in value measures the overpayment, or lost benefit of the bargain, at the time of the Plaintiffs' purchase.

111.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in and from the State of California and nationwide.

112.   Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the Class any money Toyota acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT V

## BREACH OF EXPRESS WARRANTY

### (Based on California Law)

113.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

114.   Toyota provided all purchasers and lessees of the Defective Class Vehicles with the express warranties described herein, which became part of the basis of the parties' bargain. Accordingly, Toyota's warranties are express warranties under state law.

115.   Toyota distributed the defective parts causing the Toyota Brake Defect in the Defective Class Vehicles, and said parts are covered by Toyota's warranties granted to all Defective Class Vehicle purchasers and lessors.

116.   Toyota breached these warranties by selling and leasing Defective Class Vehicles with the Toyota Brake Defect, requiring repair or replacement within the

CLASS ACTION COMPLAINT

28

applicable warranty periods, and refusing to honor the warranties by providing free repairs or replacements during the applicable warranty periods.

117.    Plaintiffs notified Toyota of its breach within a reasonable time, and/or were not required to do so because affording Toyota a reasonable opportunity to cure its breaches would have been futile. Toyota also knew about the Toyota Brake Defect, but chose instead to conceal it as a means of avoiding compliance with its warranty obligations.

118.    As a direct and proximate cause of Toyota's breach, Plaintiffs and the other Class members bought or leased Defective Class Vehicles they otherwise would not have, overpaid for their vehicles, did not receive the benefit of their bargain, and their Defective Class Vehicles suffered a diminution in value. Plaintiffs and the Class members have incurred and will continue to incur costs related to the Toyota Brake Defect's diagnosis and repair.

119.    Any attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here.

120.    Specifically, Toyota's warranty limitations are unenforceable because it knowingly sold a defective product without giving notice to Plaintiffs or Class Members.

121.    The time limits contained in Toyota's warranty period were also unconscionable and inadequate to protect Plaintiffs and Class members. Among other things, Plaintiffs and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Toyota. A gross disparity in bargaining power existed between Toyota and the Class members because Toyota knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

122.    Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Toyota's conduct.

CLASS ACTION COMPLAINT

29

123.   Toyota's breach of the express warranties has deprived Plaintiffs and the other Class Members of the benefit of their bargain.

124.   The amount in controversy of each Plaintiff's individual claim meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

125.   Toyota has been given reasonable opportunity to cure its breach of the written warranties. Alternatively, Plaintiffs and the other Class members are not required to do so because affording Toyota a reasonable opportunity to cure its breach of written warranties was, and is, futile. Toyota has long been on notice of the alleged defect from the complaints and service requests it received from Class members, as well as from their own warranty claims, customer complaint data, and/or parts sales data, and has made clear from its actions it has no intention of resolving the defect.

126.   As a direct and proximate cause of Toyota's breach of the written warranties, Plaintiffs and the other Class members sustained damages and other losses in an amount to be determined at trial. Toyota's conduct damaged Plaintiffs and the other Class Members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees, and/or other relief as deemed appropriate.

## COUNT VI

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (CAL. COM. CODE § 2314)

127.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

CLASS ACTION COMPLAINT

30

128.    Toyota was, at all relevant times, the manufacturer, distributor, warrantor, and/or seller of the Defective Class Vehicles. Toyota knew or had reason to know of the specific use for which the Defective Class Vehicles were purchased.

129.    Toyota provided Plaintiffs and Class members with an implied warranty that the Defective Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Defective Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Defective Class Vehicles suffered from a defect in the brake system at the time of sale. Therefore, the Defective Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

130.    Toyota impliedly warranted that the Defective Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Defective Class Vehicles and their brake systems manufactured, supplied, distributed, and/or sold by Toyota were safe and reliable for the purpose for which they were installed; and (ii) a warranty that the Defective Class Vehicles would be fit for their intended use.

131.    Contrary to the applicable implied warranties, the Defective Class Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs and the other Class members with reliable, durable, and safe transportation.

132.    Instead, the Defective Class Vehicles suffer from a defective design(s) and/or manufacturing defect(s).

133.    Toyota's actions, as complained of herein, breached the implied warranty that the Defective Class Vehicles were of merchantable quality and fit for such use.

## FRAUD BY CONCEALMENT

134.   Plaintiffs and the Class incorporate all of the preceding paragraphs by reference as though fully set forth herein.

135.   The Defendants made material omissions concerning a presently existing or past fact in that, for example, Defendants did not fully and truthfully disclose to its customers the true nature of the Brake Defect which was not readily discoverable by them until many years after purchase or lease of the Class Vehicles. These facts, and other facts as set forth above, were material because reasonable people attach importance to their existence or nonexistence in deciding which vehicle to purchase.

136.   Defendants were under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

137.   In addition, Defendants had a duty to disclose these omitted material facts because they were known and/or accessible only to Defendants who have superior knowledge and access to the facts, and Defendants knew they were not known to or reasonably discoverable by Plaintiff and the Class. These omitted facts were material because they directly impact the safety of the Defective Class Vehicles.

138.   Defendants possessed exclusive knowledge of the defects rendering Defective Class Vehicles inherently more dangerous and unreliable than similar vehicles.

139.   Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and the Class to purchase the Defective Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value.

140.   Plaintiffs and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. The actions of Plaintiffs and the Class were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public or the Class.

141.   As a result of the concealment and/or suppression of the facts, Plaintiffs and the Class sustained damage. For those Class Members who elect to affirm the sale, these damages include the difference between the actual value of that which Plaintiffs and the Class paid and the actual value of that which they received, together with additional damages arising from the sales transaction, amounts expended in reliance upon the fraud, compensation for loss of use and enjoyment of the property, and/or lost profits. For those who want to rescind the purchase, they are entitled to restitution and consequential damages. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights and well-being of Plaintiffs and the Class in order to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT VIII

## UNJUST ENRICHMENT

142.   Each of the preceding paragraphs is incorporated by reference as though fully set forth at length herein.

143.   This Count is asserted by the Class for restitution under California law based on Defendants' unjust enrichment.

144.   As a result of their wrongful and fraudulent acts and omissions, as set forth above, pertaining to the design defect of their vehicles and the concealment of the defect, Defendants charged a higher price for their vehicles than the vehicles' true value and

CLASS ACTION COMPLAINT

Defendants obtained monies which rightfully belong to Plaintiffs and other Class Members.

145.    Defendants enjoyed the benefit of increased financial gains, to the detriment of Plaintiffs and other Class members, who paid a higher price for vehicles which actually had lower values. It would be inequitable and unjust for Defendants to retain these wrongfully obtained profits.

146.    Plaintiffs, therefore, seek an order establishing Defendants as constructive trustees of the profits unjustly obtained, plus interest.

## COUNT IX
## VIOLATIONS OF THE SONG-BEVERLY ACT – BREACH OF IMPLIED WARRANTY
### (Cal. Civ. Code §§ 1792, 1791.1, *et seq.*)

147.    Plaintiffs and the Class incorporate by reference each preceding paragraph as though fully set forth at length herein.

148.    At all relevant times hereto, Toyota was the manufacturer, distributor, warrantor, and/or seller of the Defective Class Vehicles. Toyota knew or should have known of the specific use for which the Defective Class Vehicles were purchased.

149.    Toyota provided Plaintiff and the Class members with an implied warranty that the Defective Class Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. The Defective Class Vehicles, however, are not fit for their ordinary purpose because, *inter alia*, the Defective Class Vehicles suffered from an inherent defect at the time of sale.

150.    The Defective Class Vehicles are not fit for the purpose of providing safe and reliable transportation because of the Toyota Brake Defect.

151.    Toyota impliedly warranted that the Defective Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, inter alia, the following: (i) a warranty that the Defective Class Vehicles were manufactured, supplied, distributed, and/or sold by Toyota were safe and reliable for providing transportation; and (ii) a warranty that the Defective Class Vehicles would be fit for their intended use – providing safe and reliable transportation – while the Defective Class Vehicles were being operated.

152.    Contrary to the applicable implied warranties, the Defective Class Vehicles were not fit for their ordinary and intended purpose. Instead, the Defective Class Vehicles are defective, including, but not limited to, the Toyota Brake Defect.

153.    Toyota's actions, as complained of herein, breached the implied warranty that the Defective Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

## COUNT X

## VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT

154.    Plaintiff Turner repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

155.    Plaintiff Turner and the Washington State Consumer Class are persons within the meaning and coverage of the Washington Consumer Protection Act.

156.    The Washington Consumer Protection Act provides as follows: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of commerce are hereby declared unlawful." RCW 19.86.020.

157.    Based on the material facts alleged above, Defendants deceived, and continue to deceive, Plaintiff Turner and other members of the Washington State Consumer Class within the meaning of the Washington Consumer Protection Act. Defendants' unfair and deceptive conduct occurred in the conduct of trade or commerce.

158.    Defendants' conduct injured other persons, had the capacity to injure other persons, and/or has the capacity to injure other persons, all in violation of the Washington Consumer Protection Act.

159.    Moreover, Defendants' conduct impacted and impacts the public interest because it violates public policies protecting against unfair or deceptive practices in the design, manufacture, sale and repair of motor vehicles. As such, Defendants' conduct was and is a per se unfair or deceptive act or practice.

160.    Defendants' wrongful conduct directly, foreseeably, and proximately caused damages to Plaintiff Turner and the other members of the Washington State Consumer Class, and are in violation of the Washington Consumer Protection Act, making such deceptive acts and practices illegal and requiring injunctive relief.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, on behalf of themselves and members of the respective classes, as appropriate, respectfully request that this Court:

(a)    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

(b)    appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

(c)    award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiffs and members of the Class are entitled under the claims and causes of action as alleged above, at this time;

(d)    award pre-judgment and post-judgment interest on any monetary relief;

(e)    grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Toyota to repair, recall, and/or replace the Class vehicles and to extend the applicable warranties to a reasonable period of time, or, at a

CLASS ACTION COMPLAINT

1  minimum, to provide Plaintiffs and Class Members with appropriate curative notice

2  regarding the existence and cause of the Defect;

3       (f)    award reasonable attorneys' fees and costs; and

4       (g)    grant such further relief that this Court deems appropriate.

6  DATED: February 18, 2020          Respectfully submitted,

7                        BARRACK, RODOS & BACINE

8                        STEPHEN R. BASSER (121590)
                      SAMUEL M. WARD (216562)

10                   */s/* STEPHEN R. BASSER
                    STEPHEN R. BASSER

12                        600 West Broadway, Suite 900
                      San Diego, CA 92101

13                        Telephone:  (619) 230-0800

14                        Facsimile:   (619) 230-1874

15                        John G. Emerson

16                        Emerson Firm, PLLC
                      830 Apollo St.

17                        Houston, TX 77058

18                        Telephone:  (800) 551-8649
                      Facsimile:   (501) 286-4659

20                        Duncan C. Turner

21                        Badgley Mullins Turner, PLLC
                      19929 Ballinger Way NE, Suite 200

22                        Seattle, WA 98155
                      Telephone:  (206) 621-6566

23                        Facsimile:   (206) 621-9686

24                        *Attorneys for Plaintiffs and the*

25                        *Putative Class*

28

CLASS ACTION COMPLAINT        37